TRINA A. HIGGINS, United States Attorney (#7349)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
BRENT L. ANDRUS, Assistant United States Attorney (NY #5143474)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email:  carl.lesueur@usdoj.gov
        brent.andrus@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case No. 2:24-MJ-01042-DAO |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' MOTION FOR DETENTION** |
| AARON WAGNER, | |
| Defendant. | Magistrate Judge Daphne Oberg |

☐   The United States is not seeking detention.

☐   Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast track program, which includes agreeing to detention for the pendency of this case.

☒   The United States moves for detention based on current information.  The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence.  The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention.  The United States' motion for detention is:

☐   Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

☐ **(A)** a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

**OR**

☒ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☒ **(A)** a serious risk the defendant will flee; **or**

☒ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

### Procedure

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably the safety of any other person and the community or by a preponderance of evidence that no condition or combination of

conditions of release will reasonably assure the defendant's appearance as required.  *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

## Rebuttable Presumption

☐  A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption.  The United States acknowledges that it retains the burden of persuasion.  The statutory presumption applies:

☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

**(A)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

**(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; *and*

**(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

☐ Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2),

2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

## Factors to Be Considered

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

☐ The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).

☒ The weight of evidence against the defendant. (18 U.S.C. § 3142(g)(2)).

☒ The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings. (18 U.S.C. § 3142(g)(3)(A)).

☐ Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. (18 U.S.C. § 3142(g)(3)(B)).

☒ The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release. (18 U.S.C. § 3142(g)(4)).

☐ The defendant's lack of legal status in the United States. The defendant's legal status is:

☐ How the defendant would be subject to removal or deportation after serving a period of incarceration.

☒ The defendant's significant family or other ties outside of the United States.

☒ The defendant's use of aliases or false documents.

☐ The defendant's prior attempts to evade law enforcement.

☐ How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☐ The defendant's prior failures to appear for court proceedings.

☒ Other reasons including:

**Obstruction/Witness Intimidation & Retaliation**

*Wagner Has Falsified Documents and Attempted to Conceal Assets from the Courts*

Wagner has twice attempted to conceal millions of dollars from discovery during divorce proceedings. One of Wagner's former employees and Wagner's business partner's spouse's divorce counsel reported that Wagner and his business partner schemed to conceal assets from a Utah court last year by manufacturing loan documents and transferring funds from the business partner's accounts to Wagner's. Utah State court records indicate the divorce was initiated on August 22, 2023. The FBI has reviewed bank records showing the business partner made wires of $1,000,000 and $3,000,000 to accounts Wagner controlled on October 3 and 4, 2023, respectively. The memo lines read "Business Debt Payment Business Partners" and "Debt Repayment Business Partner." On January 8, 2024, Mains' entity sent another $500,000 to an account Wagner controlled with the memo line "Payoff of Debt Customer/Borrower/Lender."

Now that Wagner is going through his own divorce, he and the business partner are revisiting the scheme. On October 23, 2024, the FBI was preparing to restrain proceeds of a sale of property Wagner fraudulently purchased using money from restaurant investors. At the time, there is reason to believe Wagner knew he was under FBI criminal investigation, and he was in the middle of divorce proceedings, as his partner was a year earlier. The government obtained records indicating Wagner instructed $3.8 million of the sale proceeds to go to his business partner and the partner's entity, and just $982,893.55 to be paid to the seller (Wagner's entity). The closing statement indicates the funds are directed to be paid to Wagner's partner as repayment of two loans, with just one day of interest accrued on October 24, 2024 (the closing date). In other words, this "loan" appears to have come into existence the day before the closing, just in time to justify sending the money to Wagner's business partner, instead of to himself.

*Wagner Has Threatened to Sue Witnesses for a Million Dollars*

No later than July 10, 2024, Wagner reportedly retained counsel, Kurt Erskine, to inquire into the existence of a grand jury investigation. Mr. Erskine sent inquiry to a member of the U.S. Attorney's office by email. In late September, his spouse's divorce attorney reportedly stated at a divorce proceeding that it was his understanding the government might bring charges down any day.

By early October, Wagner had retained new criminal counsel, and apparently directed him to threaten defamation lawsuits against persons who had publicly reported on Wagner's misuse of funds. The United States was provided a copy of one such letter, and Wagner's counsel has confirmed there was a second to someone else. The recipient of the first letter was one of Wagner's former employees who provided statements to the United States. The letter stated:

5

In order to avoid a lawsuit against you, it is hereby demanded that you cease and desist your public defamation campaign, whether under your own name or through anonymous Reddit accounts, or in any other form whatsoever either verbally or written. This includes any statements made publicly or privately to any third party or individual, as well as any cooperation with any person or entity engaging in similar behavior. . . . Potential damages resulting from your misconduct currently exceed approximately one million dollars.

### *Wagner Has Arranged to Delete Witnesses' Social Media Accounts*

Three witnesses have reported that Wagner somehow arranged to have their social media accounts deleted after they reported on his misconduct. For some, social media accounts are trivial. But for Wagner and these investors/former employees, these profiles are critical to their business. For all three of these witnesses, it was the primary method they showcased their work and won new clients. The deletion of their accounts – not just the deletion of the critical post – allowed Wagner to prolong his criminal scheme and sent a powerful message to those in Wagner's orbit that speaking out against him carried a heavy cost.

One of these victims was an early investor who complained in a social media post about his investment experience with Wagner and then posed the question of whether anyone had ever made money with Wagner. Many negative comments were added by others to the post, and Wagner himself weighed in on the online discussion. The discussion continued in an unfavorable direction for Wagner, shortly after which the complaining investor's social media account was removed, along with the critical post in question. Several witnesses spoken to during this investigation stated that they learned later that Wagner arranged to have the former investor's profile taken down by deceptive means. Witnesses stated that Wagner arranged to have a fake death certificate provided to the social media company for the posting investor in question, causing the social media company to remove the investor's profile. Wagner reportedly boasted of his ability to remove online negative content about himself.

Another former employee of Wagner's made a critical comment about Wagner's business practices on the social media site, Instagram. Wagner responded by "blasting" the former employee online. Shortly thereafter the former employee's Instagram account was completely shut down and rendered unrecoverable by Instagram. The former employee believes that Wagner orchestrated the shut-down of his account.

A third former associate of Wagner's also had his Instagram account removed shortly after speaking out against Wagner. In this case, the former employee of Wagner had recently spoken with the FBI in connection with the instant investigation. His Instagram account was shortly thereafter disabled with little explanation. This former associate claims that it is "pretty obvious" that what happened is Wagner used his

connections to get the account deleted because the former employee had spoken the truth about Wagner's fraud. This instance occurred within the last couple months, after Wagner had retained counsel regarding the FBI criminal investigation against him.

### *Wagner Reportedly Bribed a Public Official to Get a Permit*

One witness, who previously worked with Wagner, reported Wagner personally told him that he had bribed a mayor of a Utah town. Wagner's businesses were having a difficult time getting a permit to have fire dancers at a restaurant opening. Wagner reported to this employee that he had just made a $10,000 contribution to the mayor's campaign and that the mayor was now "in his pocket," and they didn't need to worry about the permit anymore. Within a day or two, the permit that was previously rejected was approved.

## Risk of NonAppearance

Wagner also presents an unmanageable risk of flight. Wagner holds Canadian citizenship, allowing him to travel on a non-U.S. passport. This makes it much harder for U.S. authorities to track and control his international movement. Wagner also still owns an airplane at the Provo Airport and has learned how to fly (it has been reported he once had a pilot's license). He has the physical means to leave the country via the air without setting off the usual air travel warnings.

Additionally, one witness indicated in an interview with the FBI that she observed Wagner with a black duffel that he used to carry large sums of cash, and in which she observed fake passports for Wagner, his wife, and their children under fake names.

## Unmanageable Risk to the Safety of the Community

Defendant Aaron Wagner presents unmanageable risks to the safety of the community. "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Torres*, 2023 WL 7391694, *3 (10th Cir. Nov. 8, 2023) (unpublished) *quoting United States v. Cook*, 880 F. 2d 1158, 1161 (10th Cir. 1989).

Defendant Aaron Wagner is charged in a criminal complaint with a violation of 18 U.S.C. 1343 (Wire Fraud). The complaint charges that for over three years, Wagner devised and carried out a scheme to defraud investors in various restaurant businesses through a series of material misrepresentations to investors. He successfully defrauded these investors of millions of dollars, all while living a lavish lifestyle, funded in large part by these stolen investment funds. With investor money Wagner bought multiple multi-million dollar homes, several luxury automobiles, designer watches, and three

airplanes (among other things). He often paid off a monthly credit card bills in excess of $100,000 using investor funds.

Many of the restaurants promised to investors were never built. His financial predation on the community has been ongoing until the present. The evidence of his crimes is strong.

Even knowing his financial matters would be subject to court review—in fact, it appears precisely *because* his financial matters would be subject to court review—the Defendant attempted to engage in financial transactions that appear intended to conceal the nature, origin, and location of his assets as described above (described above). Further money laundering activities will cause further harms to the public, including his victims, his spouse, his investors, and impose significant litigation risks and legal burdens on his counterparties. Defendant has shown that he cannot be deterred or prevented from engaging in dishonest financial transactions. This presents danger not only to the economic safety of the community, but also danger of obstruction of justice.

**Physical Safety Risks**

There are also reasons to be concerned about threats to physical safety. One longtime former employee stated that she has heard Wagner boast that he can have someone killed for $5,000. Whether this is actually true, Wagner's tone and delivery made it clear that it was meant to be taken seriously, i.e., that he wanted the former employee to believe it. This former employee expressed genuine concern that Wagner presented a threat to her and her family's physical safety.

Wagner has been violent and abusive to his wife and children. This has been serious enough to result in two protective orders in recent months, shielding his wife and children from any contact with Wagner.

**Disrespect for Laws/Court Orders**

Finally, Wagner does not possess sufficient respect for the court or the laws to mitigate these risks, which are serious, by imposing conditions of release. Much of Wagner's conduct described above—specifically, his attempts to fraudulently conceal his assets—has occurred while Wagner was aware that his conduct would be subject to court scrutiny. It appears to be precisely for the purpose of deceiving a court.

Further, Wagner has been cited multiple times for driving with a suspended

license;[1] has failed to respond to multiple lawsuits or appear on citations[2]; carried a concealed weapon into a secured airport[3]. While no single infraction may on its own indicate that Wagner is an unmanageable risk, the volume and breadth of these infractions indicates a manifest disrespect for legal constraints. For instance, in the last ten years alone, Wagner has been cited 14 times for driving on a denied, revoked, or suspended driver's license, not to mention his many other traffic violations in this period (parking in handicapped spots, unsafe lane changes, speeding, etc.). The fact that the State of Utah could not keep Wagner off the roads by denying him a driver's license speaks volumes to his mindset. The rules do not apply to him. He is unlikely to abide by any conditions set by this court.

Wagner presents serious risks of flight, obstruction of justice, and witness intimidation, retaliation, and harassment. There are no conditions that can reasonably assure both his appearance and the safety of the community if he is released. The United States requests his detention.

## Victim Notification

☒ The United States has notified any identified victim, or attempted to do so, pursuant to 18 U.S.C. § 3771.

The position of the victim(s) on the detention of the defendant is:

---

[1] *See, e.g.,* Utah Case Nos. 245203186 (suspended license charge dropped as part of May 21, 2024 plea to speeding); 235006012 (June 14, 2023 citation for driving on license denied, suspended, disqualified, or revoked ); 195103158 (Aug. 11, 2019 citation for same); 195004279 (Aug. 9, 2019 citation for same); 195301355 (July 1, 2019 citation for same); 195003383 (June 14, 2019 citation for same); 175204344 (Dec. 28, 2017 citation for same); 165203669 (Sept. 27, 2016 citation for same); 165004403 (Oct. 16, 2016 citation for same), 165003227 (Aug. 2, 2016 citation for same); 165102344 (Mar. 8, 2016 citation for same); 155106592 (Nov. 20, 2015 citation for same); 125012397 (July 23, 2012 citation for same) 085300698 (Mar. 13, 2008 citation for same).

[2] *See, e.g.,* the following state court cases: *Mountain Land Collections LLC v. Wagner*, Case No. 239101499, Doc. Nos. 22 (August 15, 2023 order for debtor to attend hearing) and 35 (Oct. 10, 2023 order to show cause to explain failure to appear for deposition); 165004403 doc. No. 3 (warrant issued for failure to appear on traffic citation); 125103828 Doc. No. 2 (warrant for arrest for non-appearance on traffic citation)

[3] *See* Utah Case no. 211401745 Doc. No. 23 (Aug. 10, 2021 plea in abeyance).

☐ The victim(s) in this matter seek(s) a no contact order and request detention as they remain extremely concerned for their safety and the safety of a minor child.

DATED this 29th day of October, 2024.

TRINA A. HIGGINS
United States Attorney

/s/ Brent L. Andrus
Brent L. Andrus
Carl D. LeSueur
Assistant United States Attorney